IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 20-cv-00789-MSK

CHARLOTTE PHILLIPS,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

**OPINION AND ORDER AFFIRMING
THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint **(#1)**, the Plaintiff's Opening Brief **(#18)**, the Defendant's Response Brief **(#20)**, and the Plaintiff's Reply Brief **(#22)**. For the following reasons, the Commissioner's decision is affirmed.

## I. JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II. BACKGROUND

**A. Procedural History**

Plaintiff Charlotte Phillips ("Ms. Phillips") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying her applications for disability insurance benefits ("DIB") pursuant to Title II and supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. In July 2017, Ms. Phillips filed applications for DIB and SSI.

**(#17-2 at 13)**. The SSA denied these claims at the initial level of review, and Ms. Phillips requested a hearing before an administrative law judge ("ALJ"). **(#17-2 at 13)**. On December 6, 2018, an ALJ held a hearing. **(#17-2 at 39)**. At the hearing, Ms. Phillips amended her disability onset date[1] to May 14, 2013, one day after a different ALJ issued her a prior unfavorable decision[2]. **(#17-2 at 46)**.

On June 5, 2019, the ALJ issued Ms. Phillips an unfavorable Decision ("Decision") finding no disability since the onset date of May 14, 2013. **(#17-2 at 13)**. Ms. Phillips appealed the Decision to the Appeals Council asserting it was not supported by substantial evidence, and on January 21, 2020, the Appeals Counsel denied her Request for Review. **(#17-2 at 1)**. Ms. Phillips now appeals the final agency action to this Court. *See Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (stating that when the Appeals Council denies further review, the ALJ's decision is deemed the final decision of the Commissioner).

**B.   Pertinent Factual Background**

The Court offers a summary of the facts here and elaborates as necessary in its discussion.

Ms. Phillips alleged disability based on: diabetes, diabetic neuropathy, hypothyroidism,

---

[1]   "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." *Gutierrez v. Astrue*, 253 F. App'x 725, 729 (10th Cir. 2007). The date last insured is the last day of the quarter a claimant's meets insured status for disability, and only disabilities existing before date last insured establish entitlement to disability insurance benefits. 20 C.F.R. § 404.130.

[2]   The record reflects Ms. Phillips filed prior applications for both DIB and SSI in August 2011, alleging a disability onset date of April 1, 2010. These claims were initially denied on February 1 2012. Following a hearing before an ALJ held on April 23, 2013, an ALJ issued an unfavorable decision on May 13, 2013. **(#17-3 at 80-93)**.

migraine headaches, fibromyalgia, depression, bipolar disorder, and PTSD.  (**#17-3 at 145**).  At the time of her alleged onset of disability, Ms. Phillips was 37 years old.  (**#17-2 at 30**).  She previously worked as a general clerk, phlebotomist, and surveillance system monitor.  Ms. Phillips contends she suffers from both physical and mental impairments that prevent her from working.  (**#17-2 at 50-57**).  Ms. Phillips has a GED and also completed a medical assistant certification program in less than a year.  (**#17-2 at 48-49**).

**Hearing Testimony**

On December 6, 2018, at the hearing before the ALJ, Ms. Phillips appeared in person and was represented by counsel.  (**#17-2 at 39**).  Ms. Phillips testified she stopped working in 2010 due to chronic back pain she attributed to fibromyalgia, confusion, and the inability to understand directions.  (**#17-2 at 50-57**).  She also stated that in 2010, she was terminated from her customer service job at a small call center for poor performance or "messing up", "getting things confused", and "not understanding".  (**#17-2 at 50-56**).

Ms. Phillips testified she experienced "nonstop" back pain making it difficult for her to focus, stay on task, and attend to daily activities such as doing laundry, showering, and combing her hair.  She also stated that this pain prevents her from standing or sitting in one position for approximately more than 30 minutes at a time, walking more than a short distance without taking a break, and lifting more than 8 pounds.  She has participated in conservative treatments -- physical therapy and injections -- to alleviate her pain.  (**#17-2 at 47-69**).

In addition, Ms. Phillips suffers from lack of concentration and sleeplessness.  She testified she can only perform limited household chores and needs assistance with laundry and grooming tasks and reaching for various objects.  Ms. Phillips stated that she was recently

3

homeless but now lives by herself in an apartment.  She prepares simple meals and attends medical appointments but has no hobbies and does not attend church.  She reported general difficulty dealing with others because she feels they get impatient when she asks numerous questions and needs things repeated.  Ms. Phillips meets with a therapist once a month.  **(#17-2 at 47-69)**.

**Medical Evidence**

Pertinent to the arguments made by the parties is the following evidence in the record.  The medical records include references to Ms. Phillips' mental impairments of depression, PTSD, bipolar disorder and an "unspecified neurocognitive disorder".  **(#17-13 at 676-686, #17-14 at 724-825, #17-15 at 826-916)**.  In late 2016 and early 2017, Ms. Phillips was treated at the Mental Health Center of Denver with regular sessions with psychiatrist Tina Le, MD and a case manager.  **(#17-15 at 844)**.  Dr. Le diagnosed Ms. Phillips as suffering from bipolar disorder and PTSD.  **(#17-15 at 861-866)**.  Throughout 2017, the treatment notes indicated Ms. Phillips' mental condition improved but that she continued to report severe symptoms.  In April 2017, Dr. Le noted Ms. Phillips appeared to be "improving overall on current regimen with much brighter affect" despite dealing with multiple stressors.  The note also indicated Ms. Phillips had found stable housing.  Dr. Le further noted an improvement in Ms. Phillips symptoms and adjusted her medications.  **(#17-15 at 853-858)**.

Ms. Phillips returned for treatment in August 2017.  She had not been seen for four months and had not taken her medications for several months due to insurance coverage issues.  Ms. Phillips reported increased depression and hallucinations, sleeplessness, and a poor appetite.  Dr. Le recommended Ms. Phillips resume her medications and return in two weeks  **(#17-15 at**

**840-844)**.  In September 2017, the treatment note indicated Ms. Phillips was "much improved" with "overall good stable moods", which Ms. Phillips attributed to her medications. She declined any changes to her medication regimen. **(#17-15 at 832-837)**. In October 2017, Dr. Le noted Ms. Phillips was "psychiatrically stable" and was improving. **(#17-15 at 827-830)**. At a December 2017 visit with Dr. Le, Ms. Phillips reported increased confusion and upon examination, exhibited poor memory, attention and concentration. Additionally, her mood was depressed and anxious. Dr. Le adjusted Ms. Phillips' medications. **(#17-15 at 817-823)**. The following month, Ms. Phillips reported "some improvement" in her symptoms since the most recent medication changes. A mental status examination revealed her memory, attention, and concentration were functioning at a "fair" level. **(#17-15 at 812-815)**.

The medical records indicate Ms. Phillips did not return for treatment with Dr. Le until October 2018. Ms. Philips requested a medication refill and reported "going through many stressors at the moment" but did not want to talk about them. **(#17-15 at 803-808)**. In February 2019, Dr. Le again saw Ms. Phillips. Ms. Phillips reported experiencing unpleasant side effects from the medications, so she ceased taking them. Dr.. Le noted that this was likely due to Ms. Phillips restarting her medications at the last appointment after discontinuing them for a time. Ms. Phillips reported an increase in anxiety and mania and a mental status examination revealed fair results as to attention, concentration and memory with an anxious mood and blunted affect. **(#17-15 at 795-801)**.

**Medical Opinions**

In December 2017, the Disability Determination Service ("DDS") referred Ms. Phillips to psychologist Dr. Mac Bradley for a psychiatric consultative examination. **(#17-13 at 676)**.

5

Thus, on December 19, 2017, Dr. Bradley saw Ms. Phillips for a psychological evaluation, which included a psychopathologic assessment interview, record review, a brief mental status examination, and psychological testing for intellectual and memory functioning. Dr. Bradley noted Ms. Phillips' responses to questions were "generally honest". **(#17-13 at 676)**. Ms. Phillips reported to Dr. Bradley that she obtained her GED, completed a medical assistant training course, and taken some criminal justice courses. She also reported receiving average grades in those courses. **(#17-13 at 677)**.

Dr. Bradley noted that Ms. Phillips' interview responses suggested she had mild to moderate, longstanding depression. **(#17-13 at 676)**. A mental status examination revealed largely unremarkable results along with a "somewhat depressed" affect. Dr. Bradley did not observe any significant attention or orientation deficits. **(#17-13 at 678-679)**. As to the psychological testing, Dr. Bradley administered both the Wechsler Adult Intelligence Scale-IV and the Wechsler Memory Scale-IV to Ms. Phillips. Dr. Bradley noted Ms. Phillips appeared to "give adequate effort" and did not give the impression she was "underperforming" during the test. However, she scored a 65 IQ, which "falls in the Extremely Low classification of intelligence and is more than two standard deviations below the average score of the test, and it has a percentile rank of 1." **(#17-13 at 679-680)**. Further, Ms. Phillips scored "significantly below average" on all memory indices, and some of her scores were "more than three standard deviations below average scores". **(#17-13 at 680)**. Dr. Bradley stated that Ms. Phillips' low scores were inconsistent with her educational and occupational history and that her prognosis was "guarded" as to future psychological functioning. **(#17-13 at 680-681)**. Dr. Bradley diagnosed Ms. Phillips with persistent depressive disorder and unspecified neurocognitive

disorder.  He opined that Ms. Phillips' mental impairments caused moderate and marked limitations in her ability to function in a work environment.  Specifically, Dr. Bradley stated that Ms. Phillips' mental impairments caused (i) moderate limitations in her ability to perform simple and routine tasks and marked limitations in her ability to perform detailed and complex tasks; (ii) moderate limitations in sustaining concentration and attention; (iii) moderate limitations performing work-related tasks; and (iv) moderate limitations handling normal workplace pressures.  **(#17-13 at 681)**.

In February 2017, Vilma Helmer, MD, an agency psychological consultant, opined Ms. Phillips had no severe mental impairments.  **(#17-3 at 106-107, 118-120)**.

In January 2018, Charles Raps, Ph.D., an agency psychological consultant, opined Ms. Phillips had severe mental impairments that caused moderate limitations in her ability to: (i) understand, remember and apply information; (ii) interact with others; (iii) concentrate, persist, or maintain pace; and (iv) adapt or manage oneself.  He also opined that she had marked limitations in her ability to carry out detailed instructions.  **(#17-3 at 134-135, 150-157)**.

In 2011, Frederick Malmstrom, Ph.D., a consultative examining psychologist, evaluated Ms. Phillips for a prior claim.  He opined her mental disorder is primarily triggered by pain and that she is capable of following simple instructions and cooperating with co-workers, but is incapable of following complex instructions.  **(#17-7 at 322-327)**.

**C.    The ALJ's Decision**

SSI is available to an individual who is financially eligible, filed an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382.  An individual is eligible for DIB under the Act if he or she is insured, has not attained retirement age, has filed an application for

DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his [or her] previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

On June 5, 2019, the ALJ issued Ms. Phillips an unfavorable Decision. Using the conventional multi-step analytical tool, the ALJ found at step one that Ms. Phillips had not engaged in substantial gainful activity since May 14, 2013. **(#17-2 at 16)**. At step two, the ALJ found Ms. Phillips had the following severe impairments since her amended onset date of disability: fibromyalgia, obesity, degenerative disc disease of the lumbar spine, and diabetes. The ALJ further found that since Ms. Phillips' prior protective filing date of October 17, 2016, she had the following additional severe impairments: PTSD and bipolar disorder. **(#17-2 at 16)**. The ALJ considered Ms. Phillips' mental impairments of "intermittent depression, anxiety, and other symptoms" and found them to be nonsevere through December 13, 2015, her date last insured. **(#17-2 at 16-17)**.

At step three, the ALJ found Ms. Phillips did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. **(#17-2 at 17-18)**. In making this finding, the ALJ considered Ms. Phillips' mental impairments, finding she had moderate limitations in the activities of "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace" and "adapting or managing oneself".[3] **(#17-2 at 17-19)**.

---

[3] The ALJ's analysis followed the process for evaluating mental impairments, and the

The ALJ then assessed Ms. Phillips' RFC and determined that:

> since the amended alleged onset date, the claimant has had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant is limited to standing and/or walking four hours during an eight-hour workday. She has been unable to climb ramps and stairs occasionally, but must never climb ladders, ropes or scaffolds. The claimant has been able to perform occasional stooping, kneeling, crouching, and crawling. The claimant has not been able to tolerate more than moderate exposure to work hazards sch as moving machinery, or unprotected heights. She has been unable to perform more than simple, routine, repetitive job tasks. Beginning on October 17, 2016, the prior application protective filing date, the claimant has had the following limitations in addition to the previously articulated limitations. The claimant has been unable to tolerate more than occasional interaction with the general public, coworkers, and supervisors. She has been limited to low stress job environments that do not involve production rate or constant motion job tasks.

(**#17-2 at 19**). In fashioning Ms. Phillips' RFC, the ALJ discussed much of the medical evidence in the record. The ALJ observed that many of the medical records were not entirely consistent with her claims regarding the severity of the limitations resulting from her impairments. However, the evidence did "clearly establish[] the presence of severe mental impairments, with no evidence of severe mental impairments on or prior to the claimant's last date insured." (**#17-2 at 28**). The ALJ also noted Dr. Bradley's provisional diagnosis of "unspecified neurocognitive disorder" but ultimately found the treatment notes, examination findings, Ms. Phillips' reported activities and education, and Dr. Bradley's reported concerns to

---

categories of such impairments, as prescribed by the Commissioner's regulations. These include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and "paragraph C" criteria for describing adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

be inconsistent with the psychological testing results. Thus, the ALJ concluded these record inconsistencies precluded a finding that Ms. Phillips had a neurocognitive disorder or learning disorder. **(#17-2 at 28)**.

At step four, the ALJ found Ms. Phillips could not perform her past relevant work. **(#17-2 at 30)**. At step five, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, considering Ms. Phillips' age, education, work experience, and RFC, she could perform a reduced range of light, unskilled jobs in the national economy such as: office helper, electronics worker, and assembler (small products). **(#17-2 at 31)**.

The ALJ therefore found Ms. Phillips was not disabled as defined by the Social Security Act.

### III. STANDARD OF REVIEW

Though the Court's review is *de novo*, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Hendron*, 767 F.3d at 954. The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

Thus, here, the question before the Court is whether there is substantial record evidence to support the ALJ's determination that Ms. Phillips could perform light work with certain

limitations.

## IV. DISCUSSION

Ms. Phillips raises the following issues in her appeal: (1) the ALJ erred at step two by failing to include her intellectual disorder as a severe or nonsevere impairment and (2) this error continued to step four because the RFC failed to include appropriate limitations for Ms. Phillips' intellectual disorder. **(#18)**. For the reasons discussed below, none of these arguments requires reversal of the Commissioner's Decision.

**A.     Omission of Intellectual Disorder at Step Two**

Ms. Phillips contends the ALJ failed to include her mental impairment, an intellectual disorder, at step two of the sequential evaluation. **(#18)**.

At step two, the ALJ considers the "medical severity of [a claimant's] impairments." 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe if it "significantly limits [her] physical or mental ability to do basic work activities". 20 C.F.R. § 404.1520(c). The purpose of this requirement is for the claimant to "make a threshold showing that h[er] medically determinable impairment or combination of impairments" has a material effect on her job prospects. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); *Langley v. Barnhart*, 373 F.3d 1116, 1123-1124 (10th Cir. 2004); *Wells v. Colvin*, 727 F.3 1061, 1068 (10th Cir. 2013). Once this threshold is reached for any impairment by making "the de minimis showing of medical severity, the decision maker proceeds to step three." *Id.* An impairment is not severe if it amounts only to a slight abnormality or mild limitation that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Id.*

There is no dispute that the ALJ's Decision at step two failed to specifically list

"intellectual disorder" as one of Ms. Phillips' severe or nonsevere impairments. However, in this Circuit, any error was harmless given that the ALJ determined the step-two analysis was satisfied by other severe impairments and continued with the analysis. *Carpenter*, 537 F.3d at 1265–1266. Additionally, Ms. Phillips' argument is purely technical. She does not point to any change in outcome had the ALJ made a specific finding with regard to her alleged intellectual disorder at step two. In addition to identifying Ms. Phillips' severe mental impairments of PTSD and bipolar disorder, the ALJ also discussed her low IQ score and concentration/memory deficits as part of the step three analysis finding moderate limitations in the areas of her basic mental functioning and found no listing that resulted in a presumptive disability. Put simply, Ms. Phillips has not identified any limitation related to her intellectual disorder that would have resulted in a determination of her disability at step three or changed her RFC. Thus, in the absence of any meaningful impact caused by the ALJ's failure to separately address Ms. Phillips' intellectual disorder at step two, the error is harmless.

**B.      The ALJ's RFC Determination at Step Four**

Ms. Phillips makes one challenge to the ALJ's RFC determination. She contends the ALJ failed to account for limitations related to her intellectual disorder in fashioning her RFC. The Court finds no error in the RFC.

At step four in the disability analysis, the ALJ is required to assess a claimant's RFC based on all relevant evidence, medical (physical and mental) or otherwise. 20 C.F.R. § 1545. Initially, the impairments, including mental impairments, which an ALJ identifies at steps two and three are distinct from the functional limitations which must be identified and described in an RFC. The RFC finding requires a "more detailed assessment." Social Security Ruling 96-

12

8P, 1996 WL 374184, at *4 (July 2, 1996); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Bales v. Colvin*, 576 F.App'x 792, 797 (10th Cir. 2014). However, the RFC must be assessed based on all of the relevant evidence and must account for "all of [the claimant's] medically determinable impairments ... including [claimant's] impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)–(2). In addition, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts [] and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting Social Security Ruling ("SSR") 96-8P[4]) (internal quotation marks omitted).

Further, "mental functions . . . 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (quoting *Wayland v. Chater*, 76 F.3d 394, 1996 WL 50459, at * 2 (10th Cir. 1996) (table)); *Vialpando v. Colvin*, 2015 WL 1433293, at *6 (D. Colo. March 26, 2015) (stating "a limitation of skill level just accounts for issues of skill transfer, not impairment of mental functions …") (citing *Chapo*, 682 F.3d at 1290 n.3). Agency guidance draws the same distinction:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. … Any impairment-related limitations created by an

---

[4] SSR 96-8P provides:

In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may -- when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim."

*Id.* at 1996 WL 374184 (July 2, 1996).

individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at * 6.

Here, the RFC includes accommodations for Ms. Phillips' mental impairments. Notably, the ALJ specifically stated that she included additional limitations in the RFC to account for Ms. Phillips' "concentration limitations". **(#17-2 at 17)**. As previously noted, the RFC provides limitations to (i) nothing "more than simple, routine, repetitive job tasks"; (ii) only "occasional interaction with the general public, coworkers, and supervisors"; and (iii) only "low stress job environments that do not involve production rate or constant motion job tasks." **(#17-2 at 19)**.

These limitations are supported by the medical evidence and are sufficient to account for Ms. Phillips' mental impairments. The medical records reflect that Ms. Phillips' began regular mental health treatments with Dr. Le in January 2017. Dr. Le's treatment notes indicate that although Ms. Phillips' anxiety and depression (later diagnosed as bipolar disorder) symptoms fluctuated in 2017 through February 2019, the severity of her symptoms decreased with medication. The records show periods of time where Ms. Phillips did not adhere to her medication regimen, which contributed to the occurrences of fluctuating symptoms. The records also note that Ms. Phillips received her GED, attended and completed a medical assistant certification program, took some criminal justice classes, received average grades, and displayed mostly "fair" attention, concentration and memory during her treatment sessions. **(#17-2 at 48-49, #17-13 at 677, #17-15 at 795-815)**. Also, by mid-2017, Dr. Le characterized Ms. Phillips as psychiatrically stable. **(#17-15 at 827-830)**. Ms. Phillips reported living alone in an apartment, independently going places, and was capable of managing her finances. **(#17-2 at 55-56, 66, 69)**. Ms. Phillips testified she had her driver's license, and if she had access to a vehicle, she

14

would likely venture out of her apartment on a daily basis.  **(#17-2 at 55-56)**.

The record reflects that Ms. Phillips scored extremely low on the psychological testing at her consultative examination with Dr. Bradley.  However, the ALJ's Decision carefully considered these tests results along with Dr. Brandley's concerns that they were inconsistent with Ms. Phillips' reported activities, educational background, and work history.  Based on the ALJ's review of all of the medical evidence (including Ms. Phillips' medically determinable mental impairments and cognitive deficits), she fashioned an RFC that reasonably limited Ms. Phillips to unskilled work, occasional interaction with others, and low stress job environments.  These limitations take all of Ms. Phillips' mental impairments (including her cognitive deficits) into account and are supported by substantial record evidence, including Ms. Phillips' own statements.

Ms. Phillips contends the ALJ should have added limitations for "time off task, absences, and additional breaks", however, she offers no authority that an ALJ must include such limitations in the RFC, nor any argument that the inclusion of such restrictions would have changed the analysis at step five.  **(#22 at 2-3).**  The ALJ's RFC determination must be supported by some medical evidence of the claimant's ability to function in the workplace, but RFC is ultimately an administrative determination reserved to the Commissioner.  *Chapo*, 682 F.3d at 1288.  Medical records, physician observations, and the claimant's subjective statements about his or her capabilities may be used to support the RFC.  *Id.*  Here, the RFC incorporated mental limitations on the type of work (unskilled), the interaction with others (occasional) and the environment (low stress).  Ms. Phillips' proposed limitations for time off-task, absences, and breaks are neither contradicted nor undermined by the limitations determined by the ALJ in the

15

RFC.

Thus, the Court rejects Ms. Phillips' challenge to the RFC and finds it supported by substantial evidence in the record.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  The Clerk shall enter a judgment in accordance herewith.

Dated this 12th day of July, 2021.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge